IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CHARLES REYNOLDS,<br><br>        Appellant,<br><br><br>        v.<br><br>KENNETH A. RUSHTON, et al.,<br><br>        Appellees. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS APPEAL AS MOOT<br><br><br>Case No. 2:10-CV-969 TS |

This matter is before the Court on appellee Kenneth A. Rushton, Chapter 7 Trustee of the Estate of C.W. Mining Company ("Trustee"), and Interested Parties Rhino Energy LLC ("Rhino") and Castle Valley Mining LLC's ("Castle Valley") (collectively referred to hereinafter as "Movants"), Joint Motion for Dismissal of Appeal as Moot.[1]  For the reasons discussed more fully below, the Court will grant the Motion.

## I.  BACKGROUND

This dispute arises out of the involuntary Chapter 7 bankruptcy proceedings of C.W. Mining Company ("CWM").  Before entering bankruptcy, CWM was in the business of mining coal.  CWM's primary asset was an underground coal mine located in Emery County, Utah—the

---

[1]Docket No. 10.

1

Bear Canyon mine.  At issue in this appeal is the ownership of a residence adjoining the scale house of the Bear Canyon mine.  The scale house is located on land leased by CWM from C.O.P. Coal Development Company ("COP").

Structurally, the scale house is a single building that contains two separate units.  One unit serves as the scale office and a warehouse, containing the balance beams and controls for the adjacent truck scale—the truck scale is used to weigh large coal trucks and determine the amount of coal removed from the mine.  The other section is a residence.  The scale house was designed and constructed by a previous mine manager, Wendall Owen, in 1984.  At the time Mr. Owen built the scale house, COP was aware that he intended to use a part of the scale house as a personal residence.

Plaintiff Charles Reynolds ("Reynolds") moved into the residence section of the scale house after becoming the mine manager in 2004.  According to Reynolds, he purchased the home from Mr. Owen.  Reynolds has since done some remodeling to the residence section of the scale house.

In the underlying bankruptcy proceeding the Trustee sought a declaration from the bankruptcy court that Reynolds had no valid leasehold or other interest in the scale house.  The Trustee requested this declaration to establish that CWM had the sole and exclusive right to use and occupy the scale house.

On July 12, 2010, the bankruptcy court orally held that Reynolds was a "tenant at will" of CWM's scale house and that CWM had exclusive right to use and occupy the scale house

pursuant to the COP Lease.[2]  On August 11, 2010, the bankruptcy court entered an order

confirming its July 12, 2010 decision (the "Tenancy Order").  That Order states, in relevant part:

> [B]y virtue of the March 1997 Coal Operating Agreement . . . between [CWM]
> and [COP] . . . [CWM] (including its estate) has a leasehold interest in and the
> exclusive right to use and occupy the structure commonly known as the scale
> house, including any portion thereof used by Reynolds as a residence . . . located
> on real property described in the COP Lease.[3]

On August 18, 2010, Reynolds filed a motion to stay the Tenancy Order.  The bankruptcy court

orally denied Reynolds's Motion on August 19, 2010.

Meanwhile, the Trustee reached an agreement to sell the majority of CWM's mining

assets—including the Bear Canyon mine and appurtenant scale house—to Rhino for $15 million.

On August 4, 2010, the bankruptcy court entered a sale order (the "Sale Order") approving the

sale of CWM's mining assets to Rhino.  The Sale Order expressly found that Rhino was a good

faith purchaser and provided that:

> If, in the absence of any person or entity obtaining a stay pending appeal, the
> Debtor and the Buyer close under the Sale Agreement, the Buyer shall be deemed
> to be acting in "good faith" and shall be entitled to the protection of § 363(m) of
> the Bankruptcy Code as to all aspects of the transaction under and pursuant to the
> Sale Agreement if this Order or any authorization contained herein is reversed or
> modified on appeal.[4]

---

[2]The Court is cognizant of the hardship of such a finding on Reynolds.  In a hearing held
July 14, 2010, the bankruptcy court recognized that its holding "does impose a hardship on Mr.
Reynolds."  However, the bankruptcy court also reasoned that "this relates back to the fact that
Mr. Reynolds and other objecting parties have conducted their business operations in an
unconventional manner."  Reynolds "made additions to the scale house knowing that there was a
real property lease in place.  Knowing there was no written agreement.  And that's what the
situation is now."  Docket No. 12 Ex. 12, at 13.

[3]Docket No. 12 Ex. 1, at 2.

[4]*Id*. Ex. 3, at 29-30.

Pursuant to its terms, the Sale Order closed on August 25, 2010.  At the closing Rhino paid the purchase price to the Trustee, and the Trustee conveyed the mine assets to Castle Valley, Rhino's wholly owned subsidiary.  Reynolds did not object to, or seek to stay, the closing of the Sale Order.  Since the closing, Rhino and Castle Valley have expended substantial sums of money and time in reliance on the conveyance they received through the Sale Order.

Based on the preceding factual background, Reynolds raises the following issues on appeal:

> 1. Is the [residence section of the scale house] property of the bankruptcy estate under § 541 of the Bankruptcy Code?
> 2. Does Reynolds, not [CWM], have the exclusive right to use the [residence section of the scale house]?
> 3. Was the ownership and right to use and occupy the [residence section of the scale house] reasonably incident to the mining of coal under the 1997 coal operating agreement?
> 4. Was the Trustee entitled to turnover when his ownership of the [residence section of the scale house] is disputed under § 542 of the Bankruptcy Code?
> 5. Is Reynolds entitled to the benefit of the Utah Occupying Claimants Statute where the Statute does not conflict with federal law?[5]

## II.  DISCUSSION

Movants assert that the Court is without jurisdiction to determine this appeal because the relief sought by Reynolds is the effective reversal of the Sale Order in contravention of the mootness doctrine found in 11 U.S.C. § 363(m).  In the event the Court finds § 363(m) inapplicable, Movants argue that the Court should nonetheless apply the doctrine of equitable mootness and dismiss Reynolds's appeal.

---

[5]Docket No. 2, at 6.

A.      11 U.S.C. § 363(m)

Subsection 363(m) provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

Here, it is undisputed that Reynolds did not seek to stay the Sale Order.[6]  Nonetheless, Reynolds contends that § 363(m) is inapplicable because (1) Rhino is not a "good faith purchaser" and (2) the relief Reynolds's seeks will not affect the validity of the Sale Order.

1.      GOOD FAITH PURCHASER

As a threshold matter, the Court would note that Reynolds has failed to properly mount a challenge to Rhino's good faith purchaser status.  "In order to challenge a purchaser's good faith status on appeal, a party must have first raised the issue before the bankruptcy court.  It is well settled that an appellate court will not entertain an issue that was not first presented to the trial court."[7]  This is the first instance that Reynolds has objected to the bankruptcy court's finding in the Sale Order that Rhino acted in good faith.  Given Reynolds's neglect, this Court is "not required to consider the matter for the first time on appeal."[8]

_____

[6]Reynolds did seek to stay the Tenancy Order.  However, the Sale Order—not the Tenancy Order—is the § 363 order entitled to the protections of subsection (m).

[7]*In re Crowder*, 314 B.R. 445, 449 (B.A.P. 10th Cir. 2004) (internal citations omitted).

[8]*Id.*

5

Were this Court to reach the issue, it would nonetheless find Reynolds's argument to be without merit.

> A bankruptcy court's determination of good faith under § 363(m) is reviewed under the clearly erroneous standard.  A factual finding is clearly erroneous when it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.[9]

"In order to obtain good faith status under § 363(m), a purchaser must (i) buy the property without 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders' and (ii) pay 'at least 75% of the appraised value of the assets.'"[10]

Reynolds does not dispute the bankruptcy court's finding that "[t]he sale of the Mine Assets and the consideration provided by the Buyer under the Sale Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law."[11]  Instead, Reynolds argues that Rhino does not qualify as a good faith purchaser because "[f]rom the outset of its involvement in this case, Rhino has known that Reynolds claims an ownership interest in the [residence section of the scale house] and that [CWM] had appealed the very order which granted relief in this case."[12]

---

[9]*Id.* at 450.

[10]*Id.* (quoting *In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 nn.11-12 (10th Cir. 1983) (interpreting Fed. R. Bankr. P. 805, predecessor to § 363(m))).

[11]Docket No. 12 Ex. 3, at 12.

[12]Docket No. 18, at 14.

Reynolds's arguments in no way demonstrate fraud, collusion between Rhino and other bidders or the Trustee, or an attempt to take grossly unfair advantage of other bidders. Additionally, § 363(m) expressly provides that an appeal is moot whether or not the purchasing entity knew of the pendency of an appeal.  Thus, Reynolds's arguments that Rhino was aware of disputes in ownership or forthcoming appeals are unavailing under the express terms of § 363(m).

In sum, Reynolds has failed to preserve any issue regarding Rhino's status as a good faith purchaser under § 363(m) for review and, even if the issue were properly raised, "[t]here is no evidence in the record that would defeat the bankruptcy court's conclusion that [Rhino] was a good faith purchaser under § 363(m)."[13]

2.    AVAILABLE RELIEF

"[Section] 363(m) forecloses any remedy . . . that would affect the validity of the trustee's sale.  But it does not preclude a remedy that would not affect the validity of the sale."[14]  "The burden of showing mootness is on the trustee, which here means showing that [Reynolds] would not have such a remedy."[15]

Reynolds asserts that "[s]imply put, this Court can fashion relief which would permit the Reynolds the right to remain in the [h]ome they have inhabited for over twenty-five years without

---

[13]*In re Crowder*, 314 B.R. at 451.

[14]*Id*.

[15]*Id*.

having to undo the sale to Rhino and therefore Reynold's appeal is not mooted by § 363(m)."[16]
And, "even if this Court were to conclude that Reynolds' requested relief in this case would
ultimately require a rescission of the Rhino sale, such a result is not unprecedented in this
jurisdiction and would not render Reynolds's appeal . . . moot."[17]

Under § 363(m), this Court may not grant Reynolds any relief that would affect the
validity of the Sale Order.  Therefore, to the extent Reynolds seeks a rescission of the Sale Order,
such relief is barred by § 363(m).  In his Opposition, Reynolds contends that a rescission would
be proper under the Tenth Circuit's holding in *In re Paige*.[18]  As will be discussed below, *Paige*
dealt with the application of the equitable mootness doctrine.  Thus, the language from *Paige*
Reynolds relies on is inapplicable to the statutory mootness doctrine found in § 363(m).

Furthermore, the Court is unable to fashion relief permitting Reynolds the right to remain
in the scale house residence without affecting the sale to Rhino.  Pursuant to the Sale Order,
Rhino purchased CWM's mining assets, including the scale house, "free and clear of all liens,
claims, encumbrances, and interests."[19]  This Court cannot grant Reynolds a right to remain in the
scale house residence without reversing the Sale Order in contravention of § 363(m).

Reynolds also claims that the Court may fashion relief under 11 U.S.C. § 542 and the
Utah Occupying Claimant Statute that would not be moot under § 363(m).  The Tenth Circuit has

---

[16]Docket No. 18, at 13-14.

[17]*Id*. at 14.

[18]584 F.3d 1327 (10th Cir. 2009).

[19]*See* Docket No. 12 Ex. 3, at 1.

recognized that  "where state law or the Bankruptcy Code provides remedies that do not affect the validity of the sale, § 363(m) does not moot the appeal."[20]

As has been discussed previously, Reynolds may not obtain relief that would affect the validity of the Sale Order—including relief that arises under the Utah Occupying Claimant Statute or § 542.  Thus, neither state law nor the bankruptcy code could provide Reynolds the right to remain in the scale house residence without violating § 363(m).

The Court notes that Reynolds may seek damages against the proceeds of the sale without violating the Sale Order.  Such relief is only available "in the absence of a stay, when the proceeds of the sale have not been commingled with the rest of the bankruptcy estate's funds."[21]  Here, the Trustee has provided evidence that following the closing of the sale $2,145,329.05 of the proceeds of the sale were set aside pursuant to the Sale Order" for "obligations owed by [CWM]."[22]  However, Reynolds has made no claim against the proceeds of the sale to Rhino nor has Reynolds alleged that he should be allowed to recover from the set aside.

---

[20]*C.O.P. Coal Dev. Co. v. C.W. Mining Co. (In re C.W. Mining Co.)*, 641 F.3d 1235, 1239 (10th Cir. 2011) (citing *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (noting that an appeal should be dismissed as moot if it is "impossible for the court to grant any effectual relief whatever") and *Osborn v. Durant Bank & Trust Co. (In re Osborn)*, 24 F.3d 1199, 1203 (10th Cir. 1994) (holding "that because it is not impossible for the court to grant some measure of effective relief, the Osborns' appeal is not moot")).

[21]*Freightliner v. Cent. Refrigerated Serv. (In re Simon Transportation Servs.)*, 138 F. App'x. 52, 56 (10th Cir. June 2, 2005) (unpublished).

[22]*See* Docket No. 12 Ex. 14, at 2.

For the foregoing reasons, the Court finds that Reynolds has failed to allege a claim for relief that would not affect the sale order and, therefore, Movants have met their burden on this factor.

### 3.    SECTION 363 CONCLUSION

In sum, because 1) Reynolds did not seek to stay the Sale Order, 2) Rhino qualifies as a good faith purchaser, and 3) the only relief Reynolds seeks would affect the validity of the Sale Order, this appeal is moot under § 363(m).

### B.    EQUITABLE MOOTNESS

As an alternative ground for granting the instant Motion, the Court will consider whether this appeal is moot under the doctrine of equitable mootness.  In a recent decision in a related matter, the Court addressed the issue of whether the doctrine of equitable mootness should apply in the Chapter 7 context.[23]  For the same reasons provided in that case, the Court will apply the doctrine of equitable mootness to this appeal.

"The equitable mootness doctrine allows a court to decline to hear a bankruptcy appeal, even when relief could be granted, if implementing the relief would be inequitable."[24]  The Tenth Circuit formally adopted the doctrine of equitable mootness in *In re Paige*.[25]  In *Paige*, the court set out the following six-part test for determining whether an appeal is equitably moot:

---

[23]*See ANR Co., Inc. v. Kenneth A. Rushton, Trustee, et al.*, No. 2:10-CV-79 (D. Utah May 2, 2012).

[24]*C.O.P. Coal*, 641 F.3d at 1239-40 (internal citation omitted).

[25]584 F.3d 1327 (10th Cir. 2009).

(1) Has the appellant sought and/or obtained a stay pending appeal? (2) Has the appealed plan been substantially consummated? (3) Will the rights of innocent third parties be adversely affected by reversal of the confirmed plan? (4) Will the public-policy need for reliance on the confirmed bankruptcy plan—and the need for creditors generally to be able to rely on bankruptcy court decisions—be undermined by reversal of the plan? (5) If appellant's challenge were upheld, what would be the likely impact upon a successful reorganization of the debtor?  And (6) based upon a quick look at the merits of appellant's challenge to the plan, is appellant's challenge legally meritorious or equitably compelling?  These six factors are not necessarily conclusive, nor will each factor always merit equal weight.[26]

The Court will address each of the six factors in turn.

    1.    STAY

"The first question in an equitable mootness inquiry is whether the appellant secured a stay to prevent execution of the reorganization plan."  This inquiry really involves two questions: (1) Did the party seeking reversal try to obtain a stay? (2) Assuming the party seeking reversal sought a stay, was that party successful in obtaining a stay pending appeal?[27]

The Tenth Circuit has instructed that "both of these questions are significant."[28]  "On the one hand, an appellant's complete and unjustified failure to seek a stay will often make it unfair for the court to grant relief—especially if that relief may affect third parties."[29]  "On the other hand,

---

[26]*Id*. at 1337-39.

[27]*Id*. at 1341 (quoting *United States ex rel. FCC v. GWI PCS 1 Inc. (In re GWI PCS 1 Inc*.), 230 F.3d 788, 800 (5th Cir. 2000)).

[28]*Id*.

[29]*Id*. (citing *Trone v. Roberts Farm, Inc. (In re Roberts Farms, Inc.)*, 652 F.2d 793, 798 (9th Cir. 1981) ("An entirely separate and independent ground for dismissal has also been established because Appellants have failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the Bankruptcy Court and have permitted such a comprehensive change of circumstances to occur as to render it inequitable for this court to consider the merits of the appeal.")).

[the Court] will be more inclined to accommodate an appellant who has diligently but unsuccessfully pursued a stay pending appeal, even if awarding him relief may adversely affect third parties."[30]  "Thus, [the Court] will not only look to whether a stay has been obtained; [but] will also inquire into whether the appellant has sought a stay pending appeal."[31]

Here, it is undisputed that Reynolds did not seek a stay of the Sale Order.  Reynolds did seek a stay of the Tenancy Order and, according to Reynolds, the Tenancy Order is the subject of this appeal.  Nevertheless, the Tenancy Order was expressly included in the Sale Order and provided a basis for Rhino's purchase of the CWM mine assets.  For this reason, any appeal of the Tenancy Order necessarily involves the underpinnings of the Sale Order.

The Court is inclined to accommodate Reynolds because of his efforts to stay the Tenancy Order.  But, because Reynolds failed to seek a stay of the Sale Order, the Court is constrained to find that this factor weighs in favor of finding this appeal equitably moot.

2.    SUBSTANTIAL CONSUMMATION

"The second consideration in the mootness inquiry is whether the reorganization plan has been substantially consummated."[32]  "In determining whether a plan has been substantially consummated, [the Court will] apply the Bankruptcy Code's three-part definition."[33]

---

[30]*Id.* (citing *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 144 (2d Cir. 2005) (stating that "[w]e insist that a party seek a stay even if it may seem highly unlikely that the bankruptcy court will issue one")).

[31]*Id.*

[32]*Id.*

[33]*Sutton v. Weinman (In re Centrix Fin. LLC)*, 394 F. App'x 485, 487 (10th Cir. 2010) (unpublished).

The Bankruptcy Code defines "substantial consummation" of a reorganization
plan as:
"(A) transfer of all or substantially all of the property proposed by the plan to be
transferred;
(B) assumption by the debtor or by the successor to the debtor under the plan of
the business or of the management of all or substantially all of the property dealt
with by the plan; and
(C) commencement of distribution under the plan."[34]

The very nature of a sale order in a liquidation proceeding contemplates such actions

provided in the Bankruptcy Code's definition of "substantial consummation."  Once a sale order

becomes effective, it is contemplated that there will be a transfer of all or substantially all of the

property and a commencement of distribution.  Unlike the majority of reorganization plans, the

assets are not restructured; rather, they are liquidated.

In this case, CWM's assets were conveyed to Rhino in exchange for $15,000,000.

Movants assert that this transaction has been substantially consummated because: "Payments

have been made, possession and control of highly regulated properties have been assumed,

millions of dollars of equipment and repairs have been ordered, millions of dollars of bonds have

been replaced, there has been extensive work to prepare the mine, and the mining of coal has

commenced."[35]  Reynolds does not dispute that the transaction has been substantially

consummated.

Based on the foregoing, the Court finds that this factor weighs in favor of finding this

appeal equitably moot.

---

[34]*Paige*, 584 F.3d at 1341-42 (quoting 11 U.S.C. § 1101(2)).

[35]Docket No. 11, at 22 (citing Docket No. 12 Exs. 14, 15).

3.      EFFECT ON THIRD-PARTIES

"The effects that reversal will have on non-party creditors is probably the foremost concern in [the Court's] analysis of equitable mootness."[36]

The Trustee has provided evidence that $1,916,707.77 of the sale proceeds have been distributed to lienholders and other creditors of CWM.[37]  If the Sale Order were to be reversed, the Trustee would be tasked with recovering these funds.  This would necessarily cause a hardship to those non-party creditors who would be required to re-pay the amount of the proceeds each has received.

Though not necessarily third-party creditors, it is this factor that caused Rhino and Castle Valley to intervene in the instant Motion.  As interested parties—the purchasers of the CWM mining assets—Rhino and Castle Valley are concerned with how this Court's ruling may affect property they have rightfully purchased.  After expending considerable sums of money and time in reliance on the Sale Order, Rhino and Castle Valley are compelled to defend the assets they purchased.

The Court's foremost concern in this appeal is for the rights of Rhino, Castle Valley, and those third-party creditors who have received payment from the proceeds of the sale.  Because these parties stand to lose the value of their exchange through this appeal, this factor weighs in favor of finding this appeal equitably moot.

---

[36]*Paige*, 584 F.3d at 1343 (quoting *Wooley v. Faulkner (In re SI Restructuring, Inc.)*, 542 F.3d 131, 136 (5th Cir. 2008) ("The ultimate question to be decided is whether the Court can grant relief without undermining the plan and, thereby, affecting third parties.")).

[37]*See* Docket No. 12 Ex. 14, at 2.

14

4.      PUBLIC POLICY

"This factor 'reflects a court's concern for striking the proper balance between the equitable considerations of finality and good faith reliance on a judgment and the competing interests that underlie the right of a party to seek review of a bankruptcy court order adversely affecting him.'"[38]

> In [*Paige*], [the Tenth Circuit] acknowledged that "completed acts in accordance with an unstayed order of the bankruptcy court must not thereafter be routinely vulnerable to nullification if a plan of reorganization is to succeed."  And [further] found it "equally important that a court not reverse a bankruptcy plan if an appellate reversal . . . would create a nightmarish situation for the bankruptcy court on remand and make reconstructive relief extremely improbable."  But [the Tenth Circuit] also considered the seriousness of the appeal allegations as a "countervailing concern" that could weigh against a determination of equitable mootness.[39]

As has been discussed previously, Rhino, Castle Valley, and CWM's creditors have an interest in the finality of the unstayed Sale Order.  They have exercised good faith reliance on the Sale Order being a valid judgment of the bankruptcy court entitling them to the proceeds for which they have provided value or, in the case of the creditors, for which they are owed for past value provided.  While cognizant of Reynolds's right to seek review of the bankruptcy court's orders—which, undoubtedly, have an effect on Reynolds—here, the Court is persuaded that Reynolds, in a delinquent fashion, is seeking a second day in court.

---

[38] *Id.* at 1347 (quoting *First Union Real Estate Equity & Mortg. Inv. v. Club Assocs. (In re Club Assocs.)*, 956 F.2d 1065, 1069 (11th Cir. 1992)).

[39] *In re Centrix*, 394 F. App'x at 492 (quoting *Paige*, 584 F.3d at 1347).

15

Furthermore, the issues raised in this appeal are not "troubling allegations" of bad faith dealings or a lack of disinterestedness on the part of the Trustee.[40]   The only issue raised by Reynolds on appeal is the characterization of his tenancy in the residence section of the scale house.  Such does not "bring to light some issue that [speaks] to the integrity of the bankruptcy process."[41]   For these reasons, the Court find this factor weighs in favor of finding this appeal equitably moot.

5.      IMPACT ON NEW REORGANIZATION

"The fifth factor a court should consider in determining whether an appeal is equitably moot is the impact of reversal upon the likelihood of a new, successful reorganization."[42]

Movants assert that a reversal of the Tenancy Order could "have the chaotic and useless effect of putting Reynolds back into possession of the Scale House, title to which is irrevocably vested in Castle Valley by virtue of the asset sale and Section 363(m)."[43]   According to Movants, this would also put Reynolds—including his family consisting of ten children—at risk of harm, given the on-going mining operations.  The Court is also persuaded that a return of the Reynolds family to the scale house would result in a devaluation of the CWM estate, as having a family

---

[40]*Paige*, 584 F.3d at 1347 ("[T]here are countervailing concerns that outweigh the public policy interest in finality of bankruptcy court decisions in this case.  [Appellant] raises troubling allegations of bad-faith dealings between the debtor . . . and the trustee, and of a lack of disinterestedness on the part of the trustee.").

[41]*Id.*

[42]*In re Centrix*, 394 F. App'x at 493.

[43]Docket No. 27, at 22.

living in the scale house of the Bear Canyon Mine would likely give any future purchasers pause before investing in the estate.

For all of these reasons, the Court finds that this factor weighs in favor of finding this appeal equitably moot.

6.      MERITS

"The final factor in evaluating whether an appeal is equitably moot involves a 'quick look at the merits of appellant's challenge to the plan' to determine if it is 'legally meritorious or equitably compelling.'"[44]

Movants assert that "Reynolds' appeal of the Tenancy Order herein is close to frivolous."[45]  Reynolds does not rally any defense to counter this characterization.  Though without sufficient information to make a definite determination whether this appeal is meritorious, the Court would note that Reynolds's claims do not appear to be substantively compelling.  Therefore, this factor weighs in favor of finding the appeal equitably moot.

7.      EQUITABLE MOOTNESS CONCLUSION

In sum, the Court finds that review of the above factors supports a finding that this appeal is equitably moot.

---

[44]*In re Centrix*, 394 F. App'x at 493-94.

[45]Docket No. 22, at 23.

III.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Trustee, Rhino, and Castle Valley's Joint Motion for Dismissal of

Appeal as Moot (Docket No. 10) is GRANTED.  The Clerk of Court is directed to close this case

forthwith.

DATED   May 17, 2012.

BY THE COURT:

_____

TED STEWART
United States District Judge