IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re C.W. MINING COMPANY,<br><br>Debtor. | |
| CHARLES REYNOLDS,<br><br>Appellant,<br><br>v.<br><br>GARY E. JUBBER, Chapter 11 Trustee,[1]<br><br>Appellee. | MEMORANDUM DECISION<br><br>AND ORDER<br><br>ON BANKRUPTCY APPEAL<br><br>Case No. 2:10-cv-00969-TC<br><br>Bankruptcy Case No. 08-0105<br><br>(Adversary Proceeding No. 09-02798) |

This appeal arises from the bankruptcy of C.W. Mining Company (CWM), former operator of a Utah coal mine. Appellant Charles Reynolds appealed the bankruptcy court's decision in an adversary proceeding concerning ownership of a house known as the "scale house," which was located at the mine. The Trustee claimed that the scale house was part of the bankruptcy estate because CWM had exclusive control of the entire mine property, including the scale house. Mr. Reynolds maintained that he was the rightful owner of the scale house.[2] In addition, Mr. Reynolds filed a counterclaim under the Utah Occupying Claimants Statute, Utah Code Ann. § 57-6-1, et seq., seeking reimbursement for improvements he allegedly made to the scale house.

---

[1] When C.W. Mining Company was placed in involuntary Chapter 7 bankruptcy and the adversary proceeding was filed, Kenneth Rushton was the Trustee. Now C.W. Mining is in Chapter 11 bankruptcy proceedings and Gary E. Jubber is the Trustee.

[2] As explained below, the Trustee later sold the scale house and Mr. Reynolds is no longer claiming ownership of the house.

The Trustee filed a motion for partial summary judgment in the adversary proceeding, requesting a declaration that Mr. Reynolds did not have an ownership interest in the scale house and seeking dismissal of Mr. Reynolds' counterclaim. The bankruptcy court granted the motion on these two issues.[3]

Mr. Reynolds' appeal of that ruling is now before the court. For the reasons set forth below, the bankruptcy court's decision is AFFIRMED.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 1997, CWM entered into a coal operating agreement ("Operating Agreement") with C.O.P. Coal Development Company (COP), the owner of the Bear Canyon Mine in Emery County, Utah. The Operating Agreement gave CWM "the exclusive right to, and use of the described property for purposes reasonably incident to the mining and removal of coal, including any existing underground workings or facilities heretofore placed in or upon the leased area." (Supplemental App. 20, Dkt. No. 39-1.) When CWM and COP signed the Operating Agreement in 1997, the scale house had already been built on the mine property.

Charles Reynolds' father, Wendell Owen, was employed by COP beginning in the 1980s and was later employed by CWM after the Operating Agreement was signed. He worked in a variety of positions with both companies and retired in 2004 as the mine manager. In 1986, while working for COP, Mr. Owen designed the scale house and paid for the construction of the residence portion of the house. Mr. Owen testified that the purpose for building the scale house

---

[3] The Trustee also moved for summary judgment on a claim for turnover under 11 U.S.C. § 542. The bankruptcy court denied the Trustee's motion on this issue, and the Trustee did not appeal this ruling.

"was that [Mr. Owen] or somebody could be there as much for protection of the property as anything, but so that -- in other words, so that somebody could be there all the time." (Appellant's App. 68.) The scale house also included the scales and related controls for weighing coal, along with the mine office that adjoined but was separate from the residential part of the house. Mr. Owen did not pay rent to live at the scale house; rather, he lived there as part of his compensation. Mr. Owen lived in the scale house until his retirement in 2004. Mr. Reynolds then took over as manager and began living in the scale house. Mr. Reynolds and his family lived there until the house was sold in 2010.

If the parties had an agreement related to the scale house, there are no documents that memorialize the terms of such an agreement. Neither party has produced a deed or other record showing that the property was conveyed to Mr. Owen or to Mr. Reynolds. And there is no document that could be considered a lease.

## I.     Bankruptcy Proceeding

In 2007, Aquila, Inc. obtained a $24.8 million dollar judgment against CWM, which forced CWM into involuntary bankruptcy. The bankruptcy Trustee filed several adversary proceedings to recover CWM's assets, including an action against Mr. Reynolds to establish the estate's ownership of the scale house. Mr. Reynolds opposed the Trustee's action, arguing that he owned the scale house. Mr. Reynolds also filed a counterclaim under the Utah Occupying Claimants Statute (UOCS), seeking reimbursement for improvements made to the house.

In a motion for partial summary judgment, the Trustee sought a declaration that Mr. Reynolds was a tenant at the scale house and therefore did not hold an ownership interest in the house. In addition, the Trustee argued that, as a tenant, Mr. Reynolds could not recover under the

UOCS. The bankruptcy court granted the Trustee's motion with the following oral ruling given at the summary judgment hearing:

> [T]he Court finds as a matter of law and concludes that the right to use the entire scale house was conveyed to the Debtor by the coal operating agreement. The Debtor's interest in the scale house is a leasehold interest.
>
> If Mr. Reynolds acquired any rights, or if he has acquired any rights in the scale house because of any agreements with C.O.P., his rights are subject to the Debtor's prior exclusive interest under the coal operating agreement.
>
> The Court finds as a matter of law that Mr. Reynolds is a tenant at will of the Debtor. So with respect to the Trustee's third claim for relief or declaratory judgment, the Court therefore finds that Mr. Reynolds is a -- the interest Mr. Reynolds has in the scale house is as a tenant at will.

(Appellant's App. 107-10.) Because the bankruptcy court found that Mr. Reynolds was a tenant at will, it also held that "pursuant to Utah Code Section 57-6-4(3) the Occupying Claimant Statute cannot be construed to give tenants color of title against their landlord, and therefore the counterclaim is dismissed." (Id. 111.) The bankruptcy court's oral decision was followed by a written order in which the bankruptcy court reiterated that Mr. Reynolds was "a tenant at will of the Debtor and its estate" and Mr. Reynolds' counterclaim was "dismissed with prejudice and on the merits." (Id. 114.)

## II.     Mr. Reynolds' Appeal Before Judge Stewart

Mr. Reynolds appealed the bankruptcy court's decision. Mr. Reynolds argued that the bankruptcy court erred in concluding that he was CWM's tenant and erred in dismissing his counterclaim.

The case was assigned to United States District Court Judge Ted Stewart, but while the appeal was pending, the Trustee sold the mine assets, including the scale house, to another

company, Rhino Energy LLC (Rhino).  None of the parties moved for a stay, and the sale closed in August 2010.  The bankruptcy court reviewed the sale and found that Rhino was a good faith purchaser entitled to the protection of 11 U.S.C. § 363(m).

After the sale closed, the Trustee and Rhino moved to dismiss the various appeals before Judge Stewart, contending that the appeals had become moot under § 363(m) and under the doctrine of equitable mootness.  In particular, the Trustee and Rhino asserted that the relief requested by Mr. Reynolds would be an effective reversal of the property sale, and such reversal would violate the mootness doctrine found in § 363(m), particularly because Mr. Reynolds did not move to stay the sale   Judge Stewart agreed and dismissed Mr. Reynolds' appeal, holding that "because 1) [Mr.] Reynolds did not seek to stay the Sale Order, 2) Rhino qualifies as a good faith purchaser, and 3) the only relief [Mr.] Reynolds seeks would affect the validity of the Sale Order, this appeal is moot under § 363(m)."  (Mem. Decision and Order Granting Mot. to Dismiss Appeal as Moot, Appellant's App. 235.)  The district court did not address the merits of the bankruptcy court's declaration that Mr. Reynolds was a tenant or the bankruptcy court's dismissal of Mr. Reynolds' counterclaim.

### III.    Tenth Circuit Appeal

Mr. Reynolds appealed Judge Stewart's decision to the Tenth Circuit Court of Appeals but "disclaim[ed] any relief that would affect the validity of the sale to Rhino."  (Tenth Circuit Order, Appellant's App. 271.)  Mr. Reynolds sought "only the value of his home or, alternatively, the value of the improvements to his home from the estate's sale proceeds." (Id.)  So the only issue raised on appeal was whether Judge Stewart correctly concluded that his counterclaim under the Utah Occupying Claimants Statute was moot. (See id. 272 n.6 ("Only a remedy under

5

the UOCS has been preserved.").)  Because Mr. Reynolds' counterclaim would not affect the sale to Rhino, the Tenth Circuit concluded that "whether [Mr.] Reynolds could obtain monetary relief under the UOCS was squarely before the district court."  (Id. 271.)  In other words, even if Mr. Reynolds' ownership claim to the scale house was moot, his counterclaim for the value of improvements was not.  The Tenth Circuit reversed and remanded for review of Mr. Reynolds' appeal of the dismissal of his counterclaim.  Mr. Reynolds' appeal is now before the court and the court must decide if Mr. Reynolds is entitled to recover under the UOCS.

## ANALYSIS

### I.     Jurisdiction and Standard of Review

This court has jurisdiction under 28 U.S.C. § 158(a) to review the appeal of the bankruptcy court's decision.  On appeal from a bankruptcy court's decision in an adversary proceeding, the court reviews questions of law de novo and questions of fact under the clearly erroneous standard.  Osborn v. Durant Bank & Trust Co. (In re Osborn), 24 F.3d 1199, 1203 (10th Cir. 1994), abrogated in part on unrelated grounds by Eastman v. Union Pac. R.R., 493 F.3d 1151, 1156 (10th Cir. 2007).  In addition, "[u]nder Fed. R. Bank. P. 7056, Rule 56 of the Federal Rules of Civil Procedure applies."  In re W. Pac. Airlines, Inc., 273 F.3d 1288, 1291 (10th Cir. 2001).  As a result, summary judgment is appropriately granted by a bankruptcy court if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Here, Mr. Reynolds appeals the bankruptcy court's grant of partial summary judgment, which dismissed Mr. Reynolds' counterclaim under the UOCS.  Although the sole issue on appeal is whether the bankruptcy court was correct when it dismissed Mr. Reynolds'

counterclaim, Mr. Reynolds' ability to invoke the UOCS necessarily involves a determination of whether he was a tenant. If he was a tenant, he cannot recover under the UOCS. Utah Code Ann. § 57-6-4(3). Based on a close review of the materials filed by the parties and the applicable law, the court concludes that the bankruptcy court correctly held that Mr. Reynolds was a tenant, which precludes recovery under the UOCS.

## II.   Utah Occupying Claimants Statute

"The Utah Occupying Claimants Act, . . . provides relief to a party who innocently, but wrongfully occupies real property under 'color of title.'" Allen v. Hall, 2006 UT 70, ¶ 17, 148 P.3d 939. The relief provided by the UOCS includes reimbursement to the occupying claimant for the value of improvements made to the property in good faith. Utah Code Ann. § 57-6-3. To receive this statutory relief, a claimant must establish that he or she occupied the property under "color of title." Id. § 57-6-1. A person has color of title if he or she occupies the property for at least five years or makes valuable improvements in good faith. Id. § 57-6-4(2)(a). But the statute expressly states, "Nothing in this chapter shall be construed to give tenants color of title against their landlords . . . ." Id. § 57-6-4(3). So under the statute, a tenant cannot establish color of title, and therefore cannot recover, even if he occupies the property for five years and makes valuable improvements in good faith.

Mr. Reynolds relies on Jeffs v. Stubbs, 970 P.2d 1234 (Utah 1998), to argue that the exclusion for tenants should not apply to him. In Jeffs, the plaintiffs were members of a religious group who resided on tracts of land that they deeded to a trust established by the group. The trust leaders encouraged the plaintiffs to improve the properties and said the plaintiffs could live on the land permanently. Id. at 1239-40. After a doctrinal dispute, the trust leaders changed their

position and declared that the plaintiffs were tenants at will. Id. at 1240. In response, the plaintiffs filed multiple claims against the trust leaders, including a claim under the UOCS. Id.

Applying the UOCS, the Utah Supreme Court explained, "This statute requires occupying claimants to show that they (i) have 'color of title' and (ii) made valuable improvements (iii) in good faith." Id. at 1241. The court first addressed "the preliminary question of whether the claimants had color of title." Id. Because all of the plaintiffs either occupied their properties for five years or made valuable improvements with the owner's consent and knowledge, the court concluded that the plaintiffs had color of title as defined in the statute. Id.

Next, the court turned to the issue of good faith. Although the trial court had held that the plaintiffs had not made improvements in good faith, the Utah Supreme Court reversed the trial court's decision on this issue. Based on the promises by trust leaders that the plaintiffs could live on the land permanently, the Utah Supreme Court concluded that the plaintiffs reasonably believed they held a life estate in the properties. Id. at 1241-42. And with a reasonable belief of ownership, the court held that the plaintiffs improved the properties in good faith. Id.

While Jeffs involved an application of the UOCS, it is not applicable to the issues raised here. Although the trust leaders said the plaintiffs were tenants, the issue in Jeffs was not whether a landlord-tenant relationship existed between the plaintiffs and the trust. The UOCS's exclusion for tenants was not at issue and the court did not address the tenancy issue at all. Rather, the court in Jeffs focused on good faith.

Here, the UOCS's exclusion for tenants is the controlling issue. The first question under the UOCS is whether Mr. Reynolds had color of title to the scale house. Generally, the color of title requirement would be satisfied by showing that Mr. Reynolds possessed the house for five

years or made valuable improvements to the property with the owner's consent.  But even if these statutory requirements are met, "[n]othing in [the UOCS] shall be construed to give tenants color of title against their landlords . . . ." Utah Code Ann. § 57-6-4(3).  Even if Mr. Reynolds' possession of and improvements to the scale house may have otherwise established color of title under the statute, the court cannot find color of title if Mr. Reynolds was a tenant.  So the material issue is whether Mr. Reynolds' interest in the scale house was a tenancy.

### III.     Mr. Reynolds' Interest in the Scale House

There is no documentary evidence that describes Mr. Reynolds' interest in the scale house.  There are no written conveyance documents showing that Mr. Reynolds held any type of ownership interest in the property.  But there is also no written lease or other document reflecting lease terms.  As a result, the court must determine whether a tenancy can be implied.  A tenancy may be implied "whenever there is an ownership of land on one hand, and an occupation by permission on the other." Utah Optical Co. v. Keith, 56 P. 155, 158 (Utah 1899) (quotations omitted).

Here, it is undisputed that COP owned the land on which the scale house sits and allowed Mr. Owen and then Mr. Reynolds to live in the scale house.  These facts are consistent with an implied tenancy.  Moreover, the evidence shows that when CWM took control of the mine, it assumed exclusive control of the entire property, including the scale house.

The scale house was built in 1984 and was therefore on the property when CWM and COP signed the Operating Agreement in 1997.  Under the Operating Agreement, CWM had "the exclusive right to, and use of the described property for purposes reasonably incident to the mining and removal of coal, including any existing underground workings or facilities heretofore

placed in or upon the leased area." (Supplemental App. 20.) Mr. Reynolds argues that the scale house was not "incident to the mining and removal of coal" and was therefore not under CWM's exclusive control. The court disagrees.

The non-residential portion of the scale house included the scales used for measuring coal and an office used as the operations center for the mine. The residential portion of the house was separate from the office but was built as a residence specifically for the mine manager. Mr. Owen and Mr. Reynolds did not pay to live in the scale house; as Mr. Owen testified, the right to live in the scale house was part of his compensation. Indeed, the specific purpose for building the residence was to have a place where the mine manager could live onsite and "be there all the time" to protect and supervise the mine. (Appellant's App. 68.) The entire scale house, including Mr. Reynolds' residence, was an integral part of the operation of the mine and was therefore "reasonably incident to the mining and removal of coal."

Under the Operating Agreement, CWM had exclusive control of the mine property, including the scale house, and allowed Mr. Reynolds to live in the scale house because he was the mine manager. These circumstances confirm, and the court finds, that Mr. Reynolds held an implied tenancy in the scale house.[4] Even if Mr. Reynolds paid for and made improvements to the property, as a matter of law, he cannot recover under the UOCS because he cannot show that he was anything more than a tenant.

---

[4] In addition, Mr. Reynolds referred to his interest as a lease multiple times. In particular, the Trustee points to Mr. Reynolds' opening brief on his initial appeal before Judge Stewart (Dkt. No. 8). In at least four places, Mr. Reynolds specifically stated that he "leased" the scale house from COP. (See id. at 3, 7, 8, 18.) Although these statements are not dispositive of the lease issue, they provide additional support for the conclusion that Mr. Reynolds held only a leasehold in the scale house.

**IV.     Inquiry Notice**

Mr. Reynolds also contends that "COP could not grant CW authority to operate and control the Reynolds Home" because "[o]ccupancy or possession of real property is notice to everyone of the occupant's interests." (Appellant's Br. at 11, Dkt. No. 33.)  In other words, Mr. Reynolds invokes the principle of inquiry notice to argue that CWM assumed its mining operations subject to Mr. Reynolds' alleged ownership rights.

The case law does not support Mr. Reynolds' position.  Although Mr. Reynolds correctly states that the Utah Supreme Court has "held that occupancy of the premises was enough to put the parties upon inquiry," Meagher v. Dean, 91 P.2d 454, 456 (Utah 1939), this decision has since been clarified.  While "possession by someone other than the seller engenders a duty to inquire on the part of the purchaser into the rights of the party in possession," inquiry notice does not apply "where a party in possession has no rights adverse to the purchaser." Ault v. Holden, 2002 UT 33, ¶ 42, 44 P.3d 781.  And a leasehold is not a right that is contrary to the true owner's ownership interest.  See id. ¶ 44 ("The only right the Holdens held in the property at the time the Aults recorded their deed was a leasehold from an agreement with the Aults, which is not contrary to the Ault deed."); In re Granada, Inc., 92 B.R. 501, 506 (Bankr. D. Utah 1988) (possession by a tenant in a mobile home park was insufficient to put purchaser on inquiry notice). Where a purchaser expects to and does find an occupying tenant, no further inquiry into the tenant's interest is necessary.  Stumph v. Church, 740 P.2d 820, 822 (Utah Ct. App. 1987) ("The appraiser expected to find, and did find, persons occupying the premises as tenants. The appraiser did not have a duty, as claimed by plaintiffs, to inquire as to the identity of the landlord or ask to see a copy of the lease or rental agreement.").

When CWM assumed control of the mine, Mr. Owen occupied the scale house as the mine manager. As Mr. Owen acknowledged, he resided at the scale house so he could be onsite continuously for the purpose of managing the mine. These facts are consistent with a tenancy, and finding Mr. Owen in the residential portion of the scale house would not have imposed a duty on CWM to determine whether Mr. Owen claimed to have an interest beyond a lease. Because Mr. Owen's interest would not have appeared and was not contrary to COP's ownership of the scale house, inquiry notice does not apply.

### V.     11 U.S.C. § 544(a)(3)

As an alternative basis to affirm the bankruptcy court's decision, the Trustee argues that under 11 U.S.C. § 544(a)(3), he stands in the position of a bona fide purchaser such that Mr. Reynolds' interest in the scale house, if any, may be avoided. Having affirmed the bankruptcy court's decision on other, independent grounds, the court will not address the Trustee's argument under § 544(a)(3).

### ORDER

For the foregoing reasons, the August 10, 2010, decision of the United States Bankruptcy Court for the District of Utah in Adversary Proceeding No. 09-02798 in <u>In re C.W. Mining Company</u>, Bankruptcy Case No. 08-20105, is AFFIRMED.

SO ORDERED this 9th day of June, 2015.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge